**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LISA MAXTON and JON MAXTON,<br><br>         Plaintiffs,<br><br>    v.<br><br>NOVARTIS CORPORATION,<br>NOVARTIS AG,<br>NOVARTIS PHARMACEUTICALS CORPORATION,<br>NOVARTIS INSTITUTES FOR BIOMEDICAL RESEARCH, INC., and<br>NOVARTIS VACCINES AND DIAGNOSTICS, INC.,<br><br>         Defendants. | No. **3:20-cv-327**<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT NOVARTIS PHARMACEUTICALS CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO STRIKE PARAGRAPHS 30-32 OF PLAINTIFFS' COMPLAINT AND INCORPORATED BRIEF IN SUPPORT

Defendant Novartis Pharmaceuticals Corporation ("NPC") moves to dismiss the Complaint for failure to state a claim pursuant to *Twombly/Iqbal* and Rule 12(b)(6) of the Federal Rules of Procedure. Plaintiffs fail to allege that Mrs. Maxton in fact used NPC's brand name medication, Diovan HCT®. Diovan HCT® is a combination tablet containing valsartan and hydrochlorothiazide (HCT) that treats hypertension in patients whose blood pressure cannot be, or is unlikely to be, adequately controlled by a single therapy. FDA authorizes numerous other companies to sell widely available generic versions of Diovan HCT®. Plaintiffs, however, fail to allege that Mrs. Maxton's pharmacist provided her with NPC's branded product, rather than one of the generic versions sold by other companies. Plaintiffs also fail to allege that Diovan HCT® can and did cause the specific injury alleged in this case – liver cirrhosis. In the alternative, NPC

moves to strike, pursuant to Rule 12(f) of the Federal Rules of Procedure, paragraphs 30-32 from the Complaint because those paragraphs bear "no possible relation or logical connection" to plaintiffs' claims. *Haley v. Westfreight Sys., Inc.*, No. 15-CV-01161-JPG-SCW, 2016 WL 5394389, at *1-2 (S.D. Ill. Sept. 27, 2016). Paragraphs 30-32 should be stricken because they contain no allegations whatsoever about NPC, about NPC's product (the branded medication Diovan HCT®), or Mrs. Maxton's alleged injury (liver cirrhosis).

## I.  INTRODUCTION

Plaintiffs Lisa and Jon Maxton allege that Mrs. Maxton was prescribed Diovan HCT® and subsequently developed cirrhosis of the liver with ascites.[1] Compl. ¶¶ 27, 29. Plaintiffs' Complaint fails to state a claim against NPC – or any of the other defendants, all NPC affiliates who have yet to be served[2] – and should be dismissed pursuant to Rule 12(b)(6).

To state a claim against NPC, plaintiffs must allege that Mrs. Maxton actually ingested an NPC product. Infra § III.A. Plaintiffs' Complaint, however, alleges only that her doctor *prescribed* Diovan HCT® to Mrs. Maxton. Compl. ¶ 27. The Complaint fails to allege that Mrs. Maxton's pharmacy actually filled that prescription with NPC's branded product Diovan HCT®, rather than the many widely available generic versions of the same medication that are manufactured and sold by companies other than NPC.

Plaintiffs' Complaint provides only boilerplate allegations about medical causation and therefore fails to meet their pleading burden under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) to plead sufficient facts that, if true,

---

[1] Ascites is fluid accumulation in the abdominal cavity that is common with liver cirrhosis.

[2] Plaintiffs have named four Novartis entities in addition to NPC. None of these entities, however, manufactured or sold Diovan HCT® in the United States and thus are not proper defendants.

would satisfy their legal burden on medical causation. Plaintiffs must plead both that NPC's Diovan HCT® can cause liver cirrhosis and that Diovan HCT® did in fact cause Mrs. Maxton's liver cirrhosis. Plaintiffs fail to allege either.

The Complaint's only allegations addressing causation state that some generic valsartan HCT products are contaminated with nitrosamine compounds N-Nitrosodimethylamine (NDMA) and N-Nitrosodiethylamine (NDEA). Compl. ¶¶ 30-32.[3] These allegations concern *generic* versions of valsartan HCT that are not sold by NPC, and are unconnected to NPC and NPC's product Diovan HCT®. Plaintiffs claim that NDMA and NDEA can cause cancer – an injury that Mrs. Maxton does not claim to have. The Complaint also alleges that nitrosamine contamination is caused by a manufacturing defect that has been traced to certain *generic* manufacturers' production processes. Plaintiffs' immaterial allegations about recalls of other companies' contaminated generic valsartan-containing products and those versions' alleged potential for

---

[3] Paragraphs 30-32 state:

    30. Beginning in the summer of 2018, the Food and Drug Administration (hereinafter "FDA") learned of and began reporting that some versions of valsartan contained such carcinogens as N-Nitrosodimethylamine (NDMA), and N-Nitrosodiethylamine (NDEA).

    31. Starting in July 2018, the FDA produced a list of valsartan and ARB [Angiotensin II Receptor Blocker] medications that were recalled due to alleging containing the above-listed carcinogens. This list has since been expanded and updated as recently as March 22, 2019.

    32. The FDA reports NDMA and NDEA are probably human carcinogens, indicating a substance that could cause cancer.

3

carcinogenicity have no bearing on NPC's branded product, Diovan HCT®, and certainly cannot qualify as adequate allegations that NPC's branded product can cause liver cirrhosis.[4]

The remaining boilerplate in the Complaint fails to meet plaintiffs' pleading burden under *Twombly/Iqbal*. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiffs allege, for example, that "Defendants failed to exercise ordinary care in the design, research, manufacture, labeling, warnings, marketing, promotion, quality assurance, quality control, sale and/or distribution of Diovan HCT® in that Defendants knew or should have known that the drugs could proximately cause Plaintiffs." Compl. ¶ 79. But without allegations that Mrs. Maxton actually used NPC's product, that NPC's product actually contained the identified nitrosamine contaminants, and that exposure to such nitrosamine contaminants can and did cause her liver cirrhosis (rather than cancer), the Complaint fails to adequately plead any claim.

In the event the Court does not dismiss the Complaint in its entirety, NPC respectfully requests that the Court strike plaintiffs' allegations in paragraphs 30 to 32. Fed. R. Civ. P. 12(f); *Haley*, 2016 WL 5394389, at *1-2 (holding appropriate to strike prejudicial allegations with "no possible relation or logical connection" to claims). To support their cirrhosis allegation, plaintiffs' Complaint includes a heading before paragraphs 30 to 32 that states: "Diovan HCT Causes Severe Liver Injuries." But none of the three paragraphs under this heading have anything to do with Mrs. Maxton's alleged liver cirrhosis. None of these paragraphs alleges that any of NPC's branded Diovan HCT® has been contaminated by NDMA or NDEA, that NPC

---

[4] Plaintiffs do not plead that NPC has ever recalled any Diovan HCT® product in the United States due to the presence of NDMA and NDEA, the two allegedly carcinogenic impurities noted in plaintiffs' Complaint – because no such recall has occurred. *See Search List of Recalled Angiotensin II Receptor Blockers (ARBs), including Valsartan, Losartan, and Irbesartan*, U.S. Food and Drug Administration, https://www.fda.gov/drugs/drug-safety-and-availability/search-list-recalled-angiotensin-ii-receptor-blockers-arbs-including-valsartan-losartan-and (hereinafter "FDA's ARBs Recall List") (**Ex. 1**).

4

recalled any Diovan HCT® product, or that NDMA or NDEA can cause liver cirrhosis. Paragraphs 30 to 32 of the Complaint improperly and misleadingly attempt to paint NPC in an unfavorable light based on immaterial, impertinent, and scandalous allegations, and thus the Court should strike those paragraphs. Fed. R. Civ. P. 12(f).

## II.  LEGAL STANDARD

The Supreme Court has declared that Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), requires factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Iqbal*, 556 U.S. at 681 (When allegations are of a "conclusory nature . . . that disentitles them to the presumption of truth."). Rule 8(a) does not authorize a pleader's "bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555, n.3 (quoting 5.C. Wright & Miller, Federal Practice and Procedure § 1202, at 94, 95). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal citations omitted). As the Seventh Circuit observed, the *Iqbal* court "admonish[ed] those plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, that they must do more." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (dismissing case); *see also McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (Alleged facts "that are legal conclusions or elements of the cause of action . . . may be

5

disregarded on a motion to dismiss."); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together.").

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is *plausible on its face*." *Twombly,* 550 U.S. at 570 (emphasis added). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (emphasis added). Thus, a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." *Id.* at 679; *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level"). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Federal district courts in Illinois routinely dismiss complaints in product liability actions that contain nothing more than speculation, conclusory statements, and threadbare recitals of the elements of causes of actions. *See, e.g.*, *Tillman v. Taro Pharm. Indus. Ltd.*, 10-CV-04202, 2011 WL 3704762, at *3-4 (N.D. Ill. Aug. 17, 2011) (dismissing plaintiff's claims of design defect

and a failure to warn where allegations were "formulaic recitations of the elements of her cause of action").[5]

## III. ARGUMENT

### A. Plaintiffs Fail to Plead that Mrs. Maxton Received NPC's Product.

Plaintiffs fail to allege that Ms. Maxton purchased and consumed NPC's medication, Diovan HCT®; she alleges her doctor wrote a prescription for Diovan HCT®, but she does not allege that she actually bought or took NPC's Diovan HCT® instead of the generic substitution, valsartan HCT. *See* Compl. ¶¶ 27-29.

Illinois courts have long required product identification for product liability matters: the Illinois Supreme Court has rejected industry-wide liability under both market share liability and public nuisance rubrics. *See Young v. Bryco Arms*, 821 N.E.2d 1078, 1087-91 (Ill. 2004) (rejecting public nuisance); *Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 337-39, 344-45 (Ill. 1990) (rejecting market share liability); *City of Chicago v. American Cyanamid Co.*, 823 N.E.2d 126, 134-35 (Ill. App. 2005) (rejecting market share liability); *Lewis v. Lead Industries Ass'n Inc.*, 793 N.E.2d 869, 874-76 (2003) (rejecting market share liability).

In the absence of an allegation that Mrs. Maxton actually ingested NPC's product, Diovan HCT®, plaintiffs' Complaint lacks a basic element of a product liability claim – that the plaintiff in fact was injured by the defendant's product – which justifies the dismissal of the

---

[5] *See also Corwin v. Connecticut Valley Arms, Inc.*, 74 F. Supp. 3d 883 (N.D. Ill. 2014) (dismissing plaintiff's strict product liability and negligence claims "because the pleading does not tether any factual allegations to its abstract recitals of legal elements"); *Weddle v. Smith & Nephew, Inc.*, No. 14-Cv-09549, 2016 WL 1407634 (N.D. Ill. Apr. 11, 2016) (similar); *Mercado v. Bayer Healthcare Pharms. Inc.*, No. 14-Cv-6699, 2015 WL 3545238 (N.D. Ill. June 5, 2015) (similar); *Cardenas v. Abbott Labs.*, No. 11-Cv-4860, 2011 WL 4808166 (N.D. Ill. Oct. 7, 2011) (similar).

Complaint. *Accord In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 940-41, 945 (6th Cir. 2014) (affirming district court's dismissal of plaintiffs' claims against Lilly for lack of product identification); *Bulanda v. A.W. Chesterton Co.*, No. 11 C 1682, 2011 WL 2214010, at *1 (N.D. Ill. June 7, 2011) (granting motion to dismiss where plaintiff failed to specifically identify product to which plaintiff was allegedly exposed); *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760, 2007 WL 4387376, at *2 (M.D. Tenn. Nov. 30, 2007) (dismissing case because plaintiff failed to prove she received Aredia or Zometa rather than a generic equivalent and denying plaintiff's request for additional discovery). Because plaintiffs' Complaint does not include an allegation that Mrs. Maxton actually ingested NPC's Diovan HCT®, it should be dismissed.[6]

### B. Plaintiffs Fail to Plead Causation.

Each count in the Complaint requires a causal link between plaintiffs' claimed injury (liver cirrhosis) and NPC's Diovan HCT®, but plaintiffs fail to plead any facts to establish that causal link. The Complaint alleges that Mrs. Maxton was prescribed Diovan HCT® and later developed liver cirrhosis. But plaintiffs make no allegation that Diovan HCT® *caused* her liver cirrhosis, or even that Diovan HCT® can cause liver cirrhosis generally. *See* Compl. ¶¶ 27-29.

The Complaint's only allegations concerning the cause of her alleged injury involve the FDA's reporting that certain generic versions of valsartan-containing medications manufactured by other companies were recalled for containing one of two carcinogenic nitrosamine

---

[6] The requirement that plaintiffs actually plead that Mrs. Maxton's pharmacy provided her NPC's Diovan HCT is not just academic: at least eleven other generic pharmaceutical companies have been authorized by FDA to sell valsartan combined with hydrochlorothiazide. *See* U.S. Food and Drug Administration, Drugs@FDA: FDA-Approved Drugs, Search Results for valsartan (**Ex. 2**) (listing ANDA holders for generic versions of combined valsartan and hydrochlorothiazide medications).

8

contaminants, NDMA or NDEA.  *See* Compl. ¶¶ 30-32 (referring to, without citation, *FDA announces voluntary recall of several medicines containing valsartan following detection of an impurity,* U.S. Food and Drug Administration, https://www.fda.gov/news-events/press-announcements/fda-announces-voluntary-recall-several-medicines-containing-valsartan-following-detection-impurity  (July 13, 2018)).  Plaintiffs, however, do not allege that NPC's Diovan HCT® has ever been found to contain NDMA or NDEA.  Nor do they allege that any of NPC's Diovan HCT® was recalled for NDMA or NDEA contamination.  In fact, Diovan HCT® has not been among the valsartan HCT medicines that FDA recalled, as referred to in paragraph 31 of their Complaint.  *See* FDA's ARBs Recall List **(Ex. 1)**.  Nor does the Complaint allege in paragraphs 30 to 32 (or elsewhere) that the nitrosamines found in some generic valsartan HCT cause liver cirrhosis. The paragraphs only allege that NDMA and NDEA are thought to cause cancer, which is not the injury of which Mrs. Maxton complains.  Because plaintiffs fail to adequately plead causation, each count of the Complaint fails to withstand scrutiny under Rule 12(b)(6).

### i. Count I: Strict Liability; Plaintiffs' Recite the Elements of Strict Liability Without Alleging Specific Facts Supporting the Count.

Under Illinois law, "a plaintiff may proceed under two separate theories to prove that a product is 'unreasonably dangerous': (1) existence of a design or manufacturing defect, or (2) failure of the manufacturer to adequately warn consumers of the product's dangers." *Tillman v. Taro Pharm. Indus. Ltd.*, No. 10-CV-04202, 2011 WL 3704762, at *3 (N.D. Ill. Aug. 17, 2011) (citing *Lamkin v. Tower*, 138 Ill. 2d 510, 528, 563 N.E.2d 449 (1990)).  The Complaint fails to allege necessary facts for either theory of strict liability.

In *Tillman*, the court dismissed a plaintiff's strict liability design defect and failure to warn claims because they were mere recitations of the elements of those causes of action.  *See*

9

2011 WL 3704762 at *3-4.  For the design defect claim, the plaintiff alleged that the defendant's prescription medication Carbamazepine was defective in design when it left the defendant's hands and that the defendant "did not perform adequate testing on Carbamazepine before putting it in the market."  *Id.* at *4.  The plaintiff further alleged that "Carbamazepine was defective in design because, when the Carbamazepine left the defendant's hands, 'the foreseeable risks exceeded the benefits associated with the design and formulation of the drug.'"  *Id.* (citation omitted).  The plaintiff claimed that "Carbamazepine was unreasonably dangerous because it was 'more dangerous than alternative drugs available for the treatment of epilepsy or bi-polar mania' and that there were 'safer alternative medications' available."  *Id.* (citation omitted).  With respect to her claim that the drug was defective because it was not accompanied by adequate warnings, the plaintiff alleged that the defendant failed to "'report the true and accurate risk of [Steven-Johnson Syndrome] to the Plaintiff's physician, the medical community and the Plaintiff'" and that the defendant "'regularly represented in its advertising and promotional messages to said individuals that the risk of SJS and severe cutaneous reactions associated with exposure to Carbamazepine was minimal when in fact it was significantly greater.'"  *Id.* (citation omitted).  The Court dismissed the plaintiff's product-liability claims, finding that the plaintiff had not met her pleading burden because she had included "only formulaic recitations of the elements of her cause of action" and had "fail[ed] to allege specific facts" supporting her allegations.  *Id.*

The *Maxton* plaintiffs' allegations are even more formulaic and less specific than those that the court found deficient in *Tillman*, with the exception of the specific, but wholly immaterial, allegations plaintiffs make about the nitrosamine contamination of recalled lots of generic manufacturers' valsartan HCT.  Plaintiffs fail to tie Mrs. Maxton's injuries to any design

10

or manufacturing defect in NPC's Diovan HCT®. Plaintiffs merely allege a number of empty legal conclusions: that "Diovan HCT manufactured by the Defendants were [sic] defective and unreasonably dangerous to foreseeable consumers, including Plaintiff Lisa Maxton," Compl. ¶ 49, that "Defendants' Diovan HCT was manufactured in an unsafe, defective and inherently dangerous condition, which was dangerous to users, including Plaintiff Lisa Maxton," *id.* at ¶ 53, and that "[f]easible alternative designs existed that were capable of treating Plaintiff Lisa Maxton's conditions, while decreasing the risk of liver injuries." *Id.* at ¶ 71. Plaintiffs fail to allege that NPC's Diovan HCT® has NDMA or NDEA impurities, or that NDMA or NDEA can cause liver cirrhosis. As a result, plaintiffs fail to plead a cognizable manufacturing defect strict liability claim under Illinois law. Nor have they alleged that NPC was aware of any contamination of Diovan HCT® with NDMA or NDEA and failed to warn about such contamination. Accordingly, they fail to allege facts that would give rise to any duty to warn on the part of NPC.

Plaintiffs' allegations also are devoid of any facts explaining how the NPC Diovan HCT® was defective, why Diovan HCT® posed a risk of serious injury or death or what warnings NPC should have provided. Their alleged "facts" are merely legal conclusions or elements of the cause of action and are appropriately disregarded on a motion to dismiss. *See McCauley*, 671 F.3d at 617. All that remains is an implied allegation that NPC's Diovan HCT® somehow injured Mrs. Maxton and conclusory allegations of an unspecified defect or lack of unspecific warning – neither of which is enough to "nudge[] their claims across the line from conceivable to plausible," and so "their [claim] must be dismissed." *Twombly*, 550 U.S. at 547.

        ii. **Count II: Negligence; Plaintiffs' Negligence Count Duplicates Their Invalid Strict Liability Count.**

11

Plaintiffs' negligence claim is duplicative of their strict liability claim because the negligence claim is premised entirely on conclusory allegations concerning NPC's marketing, design, manufacturing, distributing, and selling of Diovan HCT® and associated warnings. *Compare, e.g.*, Compl. ¶ 71 (alleging that Defendants are strictly liable because "Defendants failed to properly market, design, manufacture, distribute, supply and sell Diovan HCT" and "failed to warn and place adequate warnings and instructions on Diovan HCT") *with id.* at ¶ 80 (alleging that Defendants are negligent for the "manufacturing, designing, labeling, marketing, distributing, supplying, selling and/or placing into the stream of commerce Diovan HCT"). For the same reasons plaintiffs' strict liability claim fails, plaintiffs' negligence claim likewise fails. *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2015 WL 7272766, at *5 (S.D. Ill. Nov. 18, 2015) (granting judgment on the pleadings on negligence, fraud, and breach of express warranty claims because they were "all premised on alleged misrepresentations or inaccuracies in [the drug's] labeling" and the same fatal flaw in the strict liability claim applied to these claims); *Griffin v. Medtronic, Inc.*, No. 17 CV 927, 2017 WL 4417821, at *4 (N.D. Ill. Oct. 5, 2017) (dismissing negligence premised on strict liability claim that was also dismissed).

### iii. Count III: Loss of Consortium; Plaintiff's Loss of Consortium Claim Is Derivative of Plaintiffs' Invalid Substantive Claims.

Mr. Maxton makes a claim for loss of consortium. *See* Compl. Count III. His claim is entirely derivative of Counts I and II, and therefore should be dismissed for the same reasons as those counts. *See Pierce v. Chicago Rail Link, L.L.C.*, No. 03 C 7524, 2005 WL 599980, at *15 (N.D. Ill. Mar. 15, 2005) ("A loss of consortium claim is derivative in nature, thus its viability depends on the success of the injured spouse's claims.").

12

### C. Paragraphs 30-32 Bear "No Possible Relation or Logical Connection" to Plaintiffs' Claims and Should Be Stricken.

The Court should strike the allegations contained in paragraphs 30-32 of the Complaint because they have no bearing on plaintiffs' claims against NPC. The paragraphs are entirely unrelated to NPC, Diovan HCT®, or liver cirrhosis. There is no reference to any of those words in these paragraphs. Instead, paragraphs 30-32 contain immaterial and impertinent allegations about other companies' generic products related to foreign manufacturing processes. Plaintiffs allege only that FDA has reported the recalls of *other manufacturers'* valsartan medications because of the presence of carcinogenic impurities. This allegation is immaterial because NPC has not recalled its Diovan HCT®. As such, there is no allegation that NPC's Diovan HCT® has been recalled, and Mrs. Maxton does not allege that she has cancer from taking Diovan HCT®. The existence of recalls of other manufacturers' generic valsartan HCT due to concern about the potential for carcinogenicity is immaterial to plaintiffs' claim that Mrs. Maxton's cirrhosis of the liver is somehow connected to her use of NPC's Diovan HCT®.

"Rule 12(f) provides that a district court 'may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter,'" such as those in paragraphs 30-32 of the Complaint. *See Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (quoting Fed. R. Civ. P. 12(f)). *See also Heller Fin., Inc. v. Midwhey Powder*, 883 F.2d 1286, 1294 (7th Cir. 1989) (stating that motions to strike serve to expedite litigation by removing "unnecessary clutter from the case"). Motions to strike are appropriate where "the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action" if not stricken. *See Haley*, 2016 WL 5394389, at *1-2 (citing 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed.)). *See*

*also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be stricken if matter bears no possible relation to controversy). Federal courts have stricken allegations in a complaint that attempt to apply unrelated conduct of others to a named defendant. *See, e.g.*, *Bloom v. Shalom*, No. CIV. 13-1442, 2014 WL 356624, at *4 (W.D. Pa. Jan. 31, 2014) (granting defendant's motion to strike because "several of the allegations are impertinent and scandalous in that they name specific persons who have no connection to the claims set forth by Plaintiff and only serve to disparage such persons and appear to have no proper purpose in this action other than to embarrass such persons and Defendant"); *Patrick Collins, Inc. v. Bolinger*, No. 112-CV-01136-SEB-MJD, 2013 WL 12291915, at *1 (S.D. Ind. Oct. 28, 2013) (striking allegations about sanctions in BitTorrent copyright infringement case because "Plaintiff ha[d] no connection whatsoever to any of the attorneys or entities" that were sanctioned and "any attempt to claim or infer otherwise is blatantly false").

These unrelated contamination allegations in plaintiffs' Complaint "have no possible relation or logical connection to the subject matter of the controversy," *Haley*, 2016 WL 5394389, at *1-2, and should be stricken in accordance with Rule 12(f) to "remove unnecessary clutter," to prevent unnecessary expenditures of time and money litigating spurious issues, and avoid unfair prejudice to defendants, *Heller*, 883 F.2d at 1294.

## IV. Conclusion

For the foregoing reasons, the Court should grant NPC's Motion to Dismiss without prejudice, or in the alternative, Motion to Strike Paragraphs 30-32 of Plaintiffs' Complaint.

Dated:  April 2, 2020				Respectfully submitted,

By: /s/ Charles J. Swartwout
Charles J. Swartwout, # 061906655000
West Main Street
P.O. Box 23560
Belleville, IL 62223-0560
(618) 277-9000
Fax: (618) 277-4594
cswartwout@boylebrasher.com

Robert E. Johnston, Esq. (*Pro Hac Vice application forthcoming*)
Donald R. McMinn, Esq. (*Pro Hac Vice application forthcoming*)
Andrew L. Reissaus, Esq. (*Pro Hac Vice application forthcoming*)
Hollingsworth LLP
1350 I Street Northwest
Washington, District of Columbia 20005
(202) 898-5800

*Counsel for Defendant Novartis Pharmaceuticals Corporation*

**CERTIFICATE OF SERVICE**

I certify that on this 2nd day of April 2020, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael P. Murphy
FREEARK, HARVEY & MENDILLO, P.C.
115 W. Washington Street, P.O. Box 546
Belleville, IL 62222-0546
mmurphy@freeark.com

*Attorney for Plaintiffs*

                                                         s/ Charles J. Swartwout