IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LISA MAXTON, and JON MAXTON    )
    )
       Plaintiffs,    )    Cause No.: 3:20-cv-327
    )
v.    )
    )
NOVARTIS CORPORATION, NOVARTIS AG, )
NOVARTIS PHARMACEUTICALS    )
CORPORATION, NOVARTIS INSTITUTES    )
FOR BIOMEDICAL RESEARCH, INC.,    )
NOVARTIS VACCINES AND DIAGNOSTICS, )
INC.    )
    )
       Defendants.    )

## PLAINTIFFS' FIRST AMENDED COMPLAINT

COMES NOW Plaintiffs, LISA MAXTON and JON MAXTON, by and through their

attorneys, Freeark, Harvey & Mendillo, P.C., and as for their Complaint and Jury

Demand against the Defendants, NOVARTIS CORPORATION, NOVARTIS AG,

NOVARTIS PHARMACEUTICALS CORPORATION, NOVARTIS INSTITUTES FOR

BIOMEDICAL RESEARCH, INC., and NOVARTIS VACCINES AND DIAGNOSTICS,

INC., states as follows:

## NATURE OF THE ACTION

1.    Plaintiffs seek compensatory damages, monetary restitution and all other

available remedies as a result of injuries caused by Defendants' defective

pharmaceutical product. Plaintiffs make the following allegations based upon their

personal knowledge and upon information and belief, as well as upon their attorneys'

investigative efforts to date, regarding Defendants' prescription drug Diovan HCT.

Exhibit "A"

2.      Plaintiffs do not relinquish the right to move to amend their claim to seek any additional claims as discovery proceeds and facts and other circumstances may warrant.

3.      As more particularly set forth herein, Plaintiffs maintain that Diovan HCT is defective in design, dangerous to human health, unfit and unsuitable to be advertised, marked and sold in the United States, and lacks proper warnings associated with its use.

4.      Diovan HCT is used in the treatment of hypertension and blood pressure control.

## PARTIES, JURISDICTION & VENUE

5.      This Court has personal jurisdiction over Defendants pursuant to, and consistent with, Illinois' long-arm statute (735 ILCS 5/2-209) and the Constitutional requirements of Due Process in that Defendants, acting through agents or apparent agents, committed one or more of the following:

a.      Defendants transacted business in the State of Illinois, 735 ILCS 5/2-209(a)(1);

b.      Defendants made or performed a contract or promise substantially connected within Illinois, 735 ILCS 5/2-209(a)(7);

c.      Defendants do business in and within Illinois, 735 ILCS 5/2-209(b)(4); and

d.      Requiring Defendants to litigate this claim in Illinois does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

6.      Defendants marketed, promoted and sold Diovan HCT in this State and in St. Clair County in particular. Accordingly, venue is appropriate in this Court.

7.      Plaintiffs allege an amount in controversy in excess of the minimal jurisdictional limits of this Court.

## PLAINTIFFS

8.      Plaintiffs Lisa Maxton and Jon Maxton are natural persons and citizens of St. Clair County, Illinois.

## DEFENDANTS

9.      Defendant Novartis Corporation is, and at all times relevant to this action, has been a New York corporation having a principal place of business in East Hanover, New Jersey.

10.     Novartis AG, is, and at all times relevant to this action, has been a Swiss corporation having a principal place of business in Basel, Switzerland.

11. Novartis Pharmaceuticals Corporation is, and at all times relevant to this action, has been a Delaware corporation having a place of business at One Health Plaza, East Hanover, New Jersey 07936. Novartis Pharmaceuticals is registered to do business in Illinois and has designated a registered agent in Illinois.

12.     Defendant Novartis Institutes for Biomedical Research, Inc. is, and at all times relevant to this action, has been a Delaware corporation with a principal place of business at 250 Massachusetts Avenue, Cambridge, Massachusetts 02139.

13.     Defendant Novartis Vaccines and Diagnostics, Inc. is, and at all times relevant to this action, has been a Delaware corporation with a principal place of business in East Hanover, New Jersey. Novartis Vaccines and Diagnostics, Inc. is

3

registered to do business in Illinois and has designated a registered agent in Illinois.

14.     Defendant Novartis AG owns Novartis Corporation, Novartis Pharmaceuticals Corporation, Novartis Institutes for Biomedical Research, Inc., and Novartis Vaccines and Diagnostics, Inc.

15.     Defendant Novartis Corporation is the parent/holding company of Defendants Novartis Pharmaceuticals Corporation, Novartis Institutes for Biomedical Research, Inc., and Novartis Vaccines and Diagnostics, Inc.

16.     At all relevant times, Defendant Novartis Corporation has exercised and exercises dominion and control over Defendants Novartis Pharmaceuticals Corporation, Novartis Institutes for Biomedical Research, Inc., and Novartis Vaccines and Diagnostics, Inc.

17.     Defendants Novartis Corporation, Novartis Pharmaceuticals Corporation, Novartis Institutes for Biomedical Research, Inc., and Novartis Vaccines and Diagnostics, Inc. are herein referred to collectively as "Novartis Defendants."

18.     Each of the Novartis Defendants was the agent and employee of the other Novartis Defendant, and in doing the alleged activities were acting within the course and scope of such agency and employment and with the other Novartis Defendants' actual and implied permission, consent, authorization, and approval.

19.     As part of their business and at all relevant times, the Novartis Defendants have been involved in the design, research, manufacture, testing, advertisement, promotion, marketing, sale, and distribution of Diovan HCT.

20.     The Novartis Defendants, in collaboration amongst themselves, designed and developed Diovan HCT.

4

21.     Defendant Novartis Pharmaceuticals has been the holder of approved NDA 020818 for Diovan HCT.

22.     The Novartis Defendants manufacture and market Diovan HCT in the United States.

23.     The Novartis Defendants have transacted and conducted business related to Diovan HCT in each of the States and Territories of the United States.

24.     The Novartis Defendants have derived substantial revenue from Diovan HCT in each of the States and Territories of the United States.

25.     The Novartis Defendants have expected or should have expected their acts to have consequences within each of the States and Territories of the United States, and derived substantial revenue from interstate commerce in each of the States and Territories of the United States related to Diovan HCT.

## FACTUAL ALLEGATIONS

**A. General Background: Diovan HCT**

26.     Defendants' Diovan HCT is a combination of valsartan, an angiotensin II receptor blocker (hereinafter "ARBs") used to treat high blood pressure and heart failure, and hydrochlorothiazide, a diuretic.

27.     In January of 2016 Plaintiff Lisa Maxton was prescribed Diovan HCT 80/12.5mg for the treatment of hypertension.

28.     Plaintiff Lisa Maxton received her prescription for Diovan HCT from BJC Employee Pharmacy.

29.     In September of 2017 Plaintiff Lisa Maxton was ordered by her physician to stop her Diovan HCT 80/12.5mg medication.

30.     On March 6, 2018, Plaintiff Lisa Maxton was assessed to have cirrhosis of liver with ascites. On this date she was also informed to avoid hepatotoxic drugs.

**B. Diovan HCT Causes Severe Liver Injuries**

31.     The National Institutes of Health (hereinafter "NIH") cholestasis can develop with use of valsartan therapy. See https://www.ncbi.nlm.nih.gov/books/NBK547944/#Valsartan.OVERVIEW.

32.     Cholestasis can occur before the development of cirrhosis. See https://www.cghjournal.org/article/S1542-3565(07)00530-7/pdf.

<u>ESTOPPEL FROM PLEADING AND TOLLING OF</u>

<u>APPLICABLE STATUTES OF LIMITATIONS</u>

33.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead all Counts of this Complaint in the broadest sense, pursuant to all laws that may apply according to choice of law principles, including the law of Illinois.

34.     Plaintiffs assert all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including but not limited to equitable tolling, delayed discovery, discovery rule and fraudulent concealment.

35.     Plaintiffs plead that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that Plaintiffs had been injured, the cause of the injury and the tortious nature of the wrongdoing that caused the injury.

6

36.     Despite diligent investigation by Plaintiffs into the cause of their injuries, the nature of Plaintiffs' injuries and damages and their relationship to Diovan HCT was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiffs' claims. Therefore, under appropriate application of the discovery rule, Plaintiffs' suit was filed well within the applicable statutory limitations period.

37.     The running of the statute of limitations in this case is tolled due to equitable tolling. Defendants are estopped from asserting a statute of limitations defense due to Defendants' fraudulent concealment, through affirmative misrepresentations and omissions, from Plaintiffs and/or the consuming public of the true risks associated with Diovan HCT. As a result of the Defendants' fraudulent concealment, Plaintiffs and/or Plaintiffs' physicians were unaware, and could not have known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the wrongful acts and omissions of the Defendants.

38.     Furthermore, the Defendants are estopped from relying on any statute of limitations because of their concealment of the truth, quality and nature of Diovan HCT. The Defendants were under a duty to disclose the true character, quality and nature of Diovan HCT because this was nonpublic information over which the Defendants had and continue to have exclusive control, and because the Defendants knew that this information was not available to Plaintiffs, their medical providers and/or to their health facilities.

39.     Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks. Plaintiffs and/or medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks and, instead, were forced to rely on Defendants' representations.

40.     Defendants were and continue to be in possession of information and data that shows the risk and dangers of these products that is not otherwise in the possession or available to Plaintiffs and/or their healthcare providers.

41.     At the time of Plaintiffs' injuries, Plaintiffs and/or Plaintiffs' healthcare providers were not aware of any facts which would have made a reasonably prudent person suspicious of Defendants' wrongdoing because Plaintiffs and Plaintiffs' healthcare providers reasonably relied on Defendants' representations that Diovan HCT does not cause liver injury.

42.     At no time prior to Plaintiffs' eventual discovery of wrongdoing did any of Plaintiffs' doctors ever inform, advise, suggest or otherwise imply that Plaintiffs' Diovan HCT use was a potential contributing cause of Plaintiffs' liver injuries.

43.     Plaintiffs reasonably relied on the skill and judgment of Plaintiffs' doctors and had no reason to further investigate, inquire into or suspect that Diovan HCT caused Plaintiffs' conditions.

44.     Plaintiffs exercised reasonable diligence to discover the cause of Plaintiff Lisa Maxton's liver injuries. Plaintiffs relied on their physicians to advise them of any complications. Plaintiffs had no reason to believe Plaintiff Lisa Maxton's injuries were

8

the result of any wrongdoing, whether intentional and/or negligent, until the discovery dates suggested below and are therefore relying on the benefit of the discovery rule.

45.     Plaintiffs had neither knowledge nor reason to suspect that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment and wrongdoing by the Defendants, Plaintiffs could not have reasonably discovered the wrongdoing at the time of their injury.

46.     At the time of Plaintiffs' injuries, Plaintiffs did not have access to or receive any studies or information recognizing the increased risk of liver injuries with Diovan HCT.

47.     Plaintiffs did not have any discussions with their doctors that there was an association between her liver injures and Diovan HCT use.

## CAUSE OF ACTION

## COUNT I

## STRICT PRODUCT LIABILITY

48.     Plaintiffs incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs pleads all Counts of this Complaint in the broadest sense, pursuant to all laws that may apply according to choice of law principles, including the law of Illinois.

49.     At the time of Plaintiffs' injuries, the Diovan HCT manufactured by the Defendants were defective and unreasonably dangerous to foreseeable consumers, including Plaintiff Lisa Maxton.

9

50.     At the time of Plaintiffs' injuries, Defendants placed Diovan HCT into the stream of commerce that was defective and in an unreasonably dangerous condition to foreseeable users, including Plaintiff Lisa Maxton.

51.     At all times herein mentioned, Defendants have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed Diovan HCT as described herein that was used by Plaintiff Lisa Maxton.

52.     Defendants' Diovan HCT was expected to and did reach consumers, handlers and persons coming into contact with said products without substantial change in the condition in which they were produced, manufactured, sold, distributed and marketed by the Defendants.

53.     Defendants' Diovan HCT was manufactured in an unsafe, defective and inherently dangerous condition, which was dangerous to users, including Plaintiff Lisa Maxton.

54.     The Diovan HCT products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective in design or formulation in that, when they left the hands of the manufacturers and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Diovan HCT.

55.     At all times herein mentioned, Diovan HCT was in a defective condition and unsafe, and Defendants knew or had reason to know that Diovan HCT was defective and unsafe, including when used in the formulation and manner recommended by the Defendants.

56.     The Diovan HCT products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective in design and/or formulation, in that, when they left the hands of the Defendants, manufacturers and/or suppliers, the Diovan HCT products were unreasonably dangerous, and were more dangerous than an ordinary consumer would expect, and more dangerous than other medications on the market designed to treat hypertension and blood pressure.

57.     Defendants knew or should have known that at all times herein mentioned Diovan HCT was in a defective condition and was inherently dangerous and unsafe.

58.     At the time Plaintiff Lisa Maxton used Defendants' Diovan HCT products, the Diovan HCT products were being used for the purposes and in a manner normally intended and foreseeable, namely to treat hypertension and blood pressure control.

59.     Defendants, with this knowledge, voluntarily designed Diovan HCT in a dangerous condition for use by the public and Plaintiff Lisa Maxton.

60.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended and foreseeable use.

61.     Defendants created a product unreasonably dangerous for its intended and foreseeable use.

62.     The Diovan HCT products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were manufactured defectively in that Diovan HCT products left the hands of Defendants in a defective condition and were unreasonably dangerous to its intended users.

11

63.    The Diovan HCT products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached their intended users in the same defective and unreasonably dangerous condition in which they were manufactured.

64.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers, and Defendants are therefore strictly liable for the injuries sustained by Plaintiff Lisa Maxton.

65.    Plaintiffs could not, by the exercise of reasonable care, have discovered the Diovan HCT defects herein mentioned and perceived their danger.

66.    The Diovan HCT products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate warnings or instructions, as the Defendants knew or should have known that the Diovan HCT products created a risk of serious and dangerous side effects, including liver injuries and other severe and personal injuries which are permanent and lasting in nature, and the Defendants failed to adequately warn of said risk.

67.    The Diovan HCT products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate warnings and/or inadequate testing.

68.    The Diovan HCT products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate postmarketing surveillance and/or warnings because, even after Defendants knew or should have known of the risks and severe and permanent health

12

consequences from ingesting Diovan HCT, they failed to provide adequate warnings to users or consumers of the product, and continued to improperly advertise, market and/or promote Diovan HCT.

69.     The Diovan HCT ingested by Plaintiff Lisa Maxton was in the same or substantially similar condition as it was when it left the possession of Defendants.

70.     Plaintiff Lisa Maxton did not misuse or materially alter the Diovan HCT product.

71.     Defendants are strictly liable for Plaintiffs' injuries in the following ways:

    a.    The Diovan HCT products as designed, manufactured, sold and supplied by the Defendants were defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

    b.    Defendants failed to properly market, design, manufacture, distribute, supply and sell Diovan HCT;

    c.    Defendants failed to warn and place adequate warnings and instructions on Diovan HCT;

    d.    Defendants failed to adequately test their Diovan HCT products;

    e.    Defendants failed to provide timely and adequate postmarketing warnings and instructions after they knew of the risk of injury associated with the use of Diovan HCT; and

    f.    Feasible alternative designs existed that were capable of treating Plaintiff Lisa Maxton's conditions, while decreasing the risk of liver injuries.

13

72.     By reason of the foregoing, Defendants are strictly liable in tort to Plaintiffs for the manufacturing, marketing, promoting, distribution, and selling of a defective Diovan HCT product.

73.     Defendants' defective design, manufacturing defect and inadequate warnings on the Diovan HCT products were acts that amount to willful, wanton and/or reckless conduct by Defendants.

74.     These defects in Defendants' Diovan HCT were a substantial factor in causing Plaintiffs' injuries.

75.     As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects, including serious liver injuries and other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life and financial expenses for hospitalization and medical care.

76.     Defendants' conduct, as described herein, was extreme and outrageous. Defendants risked the lives of the consumers and users of their product, including Plaintiff Lisa Maxton, with knowledge of the safety and efficacy problems with Diovan HCT and suppressed this knowledge from the general public, Plaintiffs, and/or Plaintiffs' healthcare providers. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all other such relief as this Court deems proper.

## COUNT II

## <u>NEGLIGENCE</u>

77.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein. Plaintiffs plead all Counts of this Complaint in the broadest sense, pursuant to all laws that may apply according to choice of law principles, including the law of Illinois.

78.     Defendants had a duty to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, packaging, selling and/or distributing Diovan HCT into the stream of commerce, including a duty to assure that Diovan HCT would not cause users to suffer unreasonable, dangerous side effects.

79.     Defendants failed to exercise ordinary care in the design, research, manufacture, labeling, warnings, marketing, promotion, quality assurance, quality control, sale and/or distribution of Diovan HCT in that Defendants knew or should have known that the drugs could proximately cause Plaintiffs' injuries and/or presented an unreasonably high risk of injury.

80.     Defendants, acting by and through their authorized divisions, subsidiaries, agents, servants and/or employees, acted with carelessness, recklessness, negligence, gross negligence and/or willful, wanton, outrageous and reckless disregard for human life and safety in manufacturing, designing, labeling, marketing, distributing, supplying, selling and/or placing into the stream of commerce Diovan HCT, including but not limited to the following particular respects:

        a.     Failing to use due care in design and/or manufacture of Diovan HCT as to avoid the aforementioned risks to individuals;

15

b.   Failing to conduct adequate testing, including pre-clinical and clinical testing and postmarketing surveillance to determine the safety of Diovan HCT.

c.   Failing to use reasonable and prudent care so as to conduct sufficient postmarketing pharmacovigilance and pharmacosurveillance;

d.   Failing to recognize the significance of their own and other testing, and information regarding Diovan HCT, which testing and information evidenced such products are dangerous and potentially harmful to humans;

e.   Failing to respond promptly and appropriately to their own and other testing, and information regarding Diovan HCT, and failing to promptly and adequately warn of the potential for liver injuries when using Diovan HCT.

f.   Failing to promptly, adequately and appropriately recommend testing and monitoring of patients upon whom Diovan HCT was used in light of Diovan HCT's dangers and potential harm to humans;

g.   Failing to properly, appropriately and adequately monitor the post-market performance of Diovan HCT and such effects on patients;

h.   Aggressively promoting, marketing, advertising and/or selling Diovan HCT given their knowledge and experience of Diovan HCT's potential harmful effects;

16

i.      Failing to use reasonable and prudent care in their statements of the efficacy, safety, and risks of using Diovan HCT, which were knowingly false and misleading, in order to influence patients, such as Plaintiff Lisa Maxton, to use Diovan HCT in excess and/or in preference to safer and effective alternative treatments;

j.      Failing to accompany Diovan HCT with proper and/or accurate warnings regarding all possible adverse side effects and risk of liver injury associated with the use of Diovan HCT;

k.      Failing to disclose to Plaintiffs and/or the medical community their full knowledge and experience regarding the potential dangers and harm associated with use of Diovan HCT;

l.      Failing to warn Plaintiffs and/or Plaintiffs' healthcare providers of the severity and duration of such adverse side effects;

m.      Failing to warn Plaintiffs and/or Plaintiffs' healthcare providers prior to actively encouraging the sale of Diovan HCT, either directly or indirectly, orally or in writing, about the increased risk of liver injury;

o.      Placing and/or permitting the placement of Diovan HCT into the stream of commerce without adequate warnings that it is harmful to humans and/or without properly warning of said product's dangerousness;

p.      Failing to withdraw Diovan HCT from the market and stream of commerce, or restrict their use and/or warn of such product's potential dangers, given their knowledge of the dangers and harms

17

associated with use of Diovan HCT;

q. Failing to respond or react promptly and appropriately to reports of Diovan HCT causing harm to patients'

r. Disregarding government and/or industry studies, information, documentation and recommendations, consumer complaints and reports and/or other information regarding the hazards of Diovan HCT and its potential harm to humans;

s. Under-reporting, underestimating and/or downplaying the serious dangers of Diovan HCT;

t. Failing to exercise reasonable care in informing physicians and healthcare providers using Diovan HCT about their own knowledge regarding the potential dangers and harm associated with use of Diovan HCT;

u. Failing to adequately warn Plaintiffs and/or Plaintiffs' healthcare providers of the known or reasonably foreseeable danger that Plaintiff Lisa Maxton would suffer serious injury by ingesting Defendants' Diovan HCT;

v. Promoting Diovan HCT in advertisements, websites and other modes of communication aimed at creating and/or increasing user and consumer demand without regard to the dangers and risks associated using Diovan HCT;

w. Failing to conduct and/or respond to postmarketing surveillance of complications and injuries associated with Diovan HCT;

     x.     Failing to use due care under the circumstances;

     y.     Other such acts or omissions constituting negligence and carelessness as may appear during the course of discovery or at the trial of this matter.

81.     Despite the fact that Defendants knew or should have known that Diovan HCT caused unreasonable, dangerous risk of liver injury, Defendants continued to market Diovan HCT to consumers, including the medical community and Plaintiffs.

82.     Defendants knew or should have known that consumers such as Plaintiff Lisa Maxton would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described herein, including the failure to comply with federal requirements.

83.     It was foreseeable to Defendants that Defendants' Diovan HCT, as designed and marketed, would cause serious injury to consumers, including Plaintiff Lisa Maxton.

84.     Despite the fact that Defendants knew or should have known that Diovan HCT caused unreasonable risks of harm when used as intended by the Defendants, the Defendants continued to advertise, market and sell Diovan HCT to patients, including Plaintiffs and healthcare providers.

85.     As a direct and proximate result of Defendants' negligence, Plaintiffs suffered serious physical injury, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

86.     Defendants knowingly and intentionally defectively designed and provided inadequate warnings related to the design of Diovan HCT in willful, wanton and reckless disregard for the safety and well-being of all patients and consumers, including Plaintiffs, for the purpose of achieving profits and market share over safety.

87.     Defendants acted in reckless disregard to public safety and well-being, including Plaintiffs' safety and well-being, and with actual knowledge that Diovan HCT was unsafe for their recommended use for the treatment of hypertension and blood pressure control.

88.     Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public, including Plaintiffs and/or Plaintiffs' healthcare providers concerning the dangers of Diovan HCT, and consciously decided to aggressively market and sell Diovan HCT, putting economic, financial and market share advantage over safety and efficacy considerations.

89.     As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects, including serious liver injuries, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life and financial expenses for medical care.

90.     Defendants conduct, as described herein, was extreme and outrageous. Defendants risked the lives of the consumers and users of their product, including Plaintiff Lisa Maxton, with knowledge of the safety and efficacy problems with their drugs and suppressed this knowledge from the general public, Plaintiffs and/or Plaintiffs' healthcare providers. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct

20

warrants an award of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all other such relief as this Court deems proper.

### COUNT III

### LOSS OF CONSORTIUM

91.     Plaintiffs incorporate by reference each proceeding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead all Counts of this Complaint in the broadest sense, pursuant to all laws that may apply according to choice of law principles, including the law of Illinois.

92.     Plaintiff Jon Maxton was at all times relevant hereto the spouse of Plaintiff Lisa Maxton and as such lives and cohabits with Plaintiff Lisa Maxton.

93.     For the reasons set forth herein, Plaintiffs have necessarily paid and have become liable to pay for medical aid, treatment and for medications, and will necessarily incur further expenses of a similar nature in the future.

94.     For the reasons set forth herein, Plaintiff Jon Maxton has been caused, presently and in the future, to suffer the loss of his spouse's companionship, services, society, and ability of Plaintiff Jon Maxton's spouse has in those respects has been impaired and depreciated, and the martial association between husband and wife has been altered, and, accordingly, the Plaintiffs have been caused great mental anguish.

95.     Defendants misled both the medical community and the public at large, including Plaintiffs, by making false misrepresentations about the safety of Diovan HCT. Defendants downplayed, understated and disregarded their knowledge of the serious

and permanent injuries associated with Diovan HCT use despite available information demonstrating that the product was likely to cause serious side-effects to its users.

96.     Defendants were or should have been in possession of evidence demonstrating that their products caused serious side effects. Nevertheless, they continued to market the products by providing false and misleading information with regard to the safety and efficacy of Diovan HCT.

97.     Defendants' actions, as described herein, were performed willfully, intentionally and with reckless disregard for the rights of the Plaintiffs and the public.

98.     As a result of the foregoing acts and omissions, Plaintiff Jon Maxton's spouse was caused to suffer serious and dangerous side effects, including serious liver injuries and other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life and financial expenses for hospitalization and medical care.

99.     Defendants' conduct, as described herein, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff Lisa Maxton, with knowledge of the safety and efficacy problems with Diovan HCT and suppressed this knowledge from the general public, Plaintiffs and/or Plaintiffs' healthcare providers. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all other such relief as this Court deems proper.

## PRESERVATION CLAIMS

100.   Plaintiffs incorporate by reference each and every paragraph of this
Complaint as if fully set forth herein and further allege as follows:

101.   Many states have recently enacted tort reform statutes with "exclusive
remedy" provisions. Courts have yet to determine whether these exclusive remedy
provisions eliminate or supersede, to any extent, state common law claims. If during the
pendency of this action this court makes any such determination, Plaintiffs hereby
specifically make claim to and preserve any State claim based upon any exclusive
remedy provision, under any state law this court may apply, to the extent not already
alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants on each of the
above-referenced claims and causes of action, jointly and severally, as follows:

a.      Awarding compensatory damages in excess of $75,000, including but not
limited to pain, suffering, discomfort, physical impairment, emotional
distress, loss of enjoyment of life, loss of consortium and other
noneconomic damages in an amount to be determined at trial of this
action;

b.      Awarding economic damages in the form of medical expenses, out of
pocket expenses, lost earnings and other economic damages in an
amount to be determined at trial of this action;

c.      Punitive and/or exemplary damages for the wanton, willful, fraudulent,
reckless acts of the Defendants who demonstrated a complete disregard

and reckless indifference for the safety and welfare of the general public and Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

d.   Prejudgment interest;

e.   Post-judgment interest;

f.   Awarding reasonable attorneys' fees;

g.   Awarding the costs of these proceedings;

h.   Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

TAKE NOTICE that Plaintiffs demand trial by jury as to all issues herein.

FREEARK, HARVEY & MENDILLO, P.C.

BY:   /s/Michael P. Murphy
      MICHAEL P. MURPHY #6205294
      115 W. Washington Street, P.O. Box 546
      Belleville, IL 62222-0546
      618-233-2686 – 618-233-5677 (fax)
      mmurhpy@freeark.com
      ATTORNEY FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LISA MAXTON, and JON MAXTON            )
                                           )
      Plaintiffs,                            )        Cause No.: 3:20-cv-327
                                           )
v.                                         )
                                           )
NOVARTIS CORPORATION, NOVARTIS AG,         )
NOVARTIS PHARMACEUTICALS                   )
CORPORATION, NOVARTIS INSTITUTES           )
FOR BIOMEDICAL RESEARCH, INC.,             )
NOVARTIS VACCINES AND DIAGNOSTICS,         )
INC.                                       )
                                           )
      Defendants.                            )

## AFFIDAVIT

COMES NOW Michael P. Murphy, being duly sworn upon his oath, and states to the Court as follows:

1.     That I am the attorney of record for the Plaintiffs, LISA MAXTON and JON MAXTON, and it is my belief that Plaintiffs' damages are in excess of $75,000.00, based upon my investigation to date.

FURTHER AFFIANT SAYETH NOT.

_____
MICHAEL P. MURPHY

SUBSCRIBED AND SWORN TO before me this 17th day of April, 2020.

"OFFICIAL SEAL"
KRISTIN E. LUCASH
NOTARY PUBLIC — STATE OF ILLINOIS
MY COMMISSION EXPIRES AUG. 11, 2023

_____
Notary Public

25